UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:

                                                          Case No.: 10-74946-ast
Gary V. Otten,                                            Chapter 7


                          Debtor.
--------------------------------------------------------X
Gary V. Otten,

                          Plaintiff,


         - against -                                      Adv. Pro. No.: 12-8045-ast


Majesty Used Cars, Inc., and
Robert Semitekolos,


                          Defendants.
--------------------------------------------------------X

**MEMORANDUM OPINION GRANTING DEFENDANTS SUMMARY JUDGMENT
ON DEBTOR'S DISCHARGE INJUNCTION VIOLATION CLAIM**

         Pending before the Court is the motion of the defendants, Majesty Used Cars, Inc.

("Majesty"), and Robert Semitekolos ("Semitekolos" and together, the "Defendants"), for

summary judgment (the "Motion") [dkt item 17].  The plaintiff is the debtor in the main case,

Gary V. Otten ("Debtor"), who is a former employee of Majesty.  Debtor alleges that Defendants

violated his discharge injunction under 11 U.S.C. § 524(a)(2)[1].  Defendants had filed a

prepetition criminal complaint alleging that Debtor altered Majesty's financial records to

increase his commissions on car sales.  Debtor alleges that Defendants violated his discharge

injunction by filing a second criminal complaint, after Debtor received a discharge.

         This case presents a novel issue in the Second Circuit on the intersection of bankruptcy

and criminal law, specifically whether, and under what circumstances, a creditor who filed a

prepetition criminal complaint related to a debt that is later discharged in bankruptcy may be

---

[1] All statutory references are to the "Bankruptcy Code", 11 U.S.C. §§ 101, *et seq.*, unless otherwise stated.

held liable for a discharge injunction violation for cooperating with law enforcement in the post-discharge investigation and prosecution of the criminal complaint and, in particular, for filing a post-discharge criminal complaint.  For the reasons set forth below, this Court concludes that Defendants' actions did not violate Debtor's discharge injunction because the post-discharge criminal complaint arose from a "common core of operative facts" with the prepetition criminal complaint and was, therefore, a continuation of the prepetition criminal proceeding. Alternatively, Debtor has failed to establish by clear and convincing evidence that Defendants violated the discharge injunction by filing the post-discharge criminal complaint because (1) the district attorney had discretion to determine whether to investigate and prosecute Debtor based upon the post-discharge criminal complaint, and (2) Debtor offers no evidence that Defendants exercised any control over the criminal investigation or prosecution, even though (3) Debtor has established that any charges that may have been filed had a possibility of resulting in compensation to Defendants.  Finally, Debtor has failed to prove by clear and convincing evidence that Defendants filed the post-discharge complaint with the intent to collect a discharged debt.  Therefore, Defendants' Motion for summary judgment will be granted.

## Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334(a) and (b) and 157(b)(2)(A) and (O), and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011.

## Background and Procedural History

The material facts in this adversary proceeding are not in genuine dispute, and are taken from the parties' filings and admissible evidence.  The material uncontroverted evidence before

this Court consists of two criminal complaints filed by Defendants against Debtor and annexed to both parties' filings, an Affidavit executed by Semitekolos on February 23, 2011 in connection with the second criminal complaint, and a Declaration of Semitekolos sworn to under penalty of perjury and submitted in support of summary judgment.[2]

Beginning in or about 2006, Debtor was employed as a used car salesman by Majesty, which owns and operates a used car dealership in Smithtown, New York. Semitekolos is the president and owner of Majesty.

Some time in or about 2009, Semitekolos accused Debtor of altering Majesty's financial records to increase Debtor's commissions on car sales by several hundred thousand dollars. Debtor agreed to settle these allegations. On or about July 20, 2009, Debtor executed a promissory note in favor of Majesty in the amount of $328,900, delivered a bank check for $80,000 to Majesty, and executed a confession of judgment in favor of Majesty for the balance of $248,900 (the "Confession of Judgment"). Debtor paid part of the Confession of Judgment, but ceased making payments in or about March 2010.

On March 23, 2010, after Debtor defaulted in making payments, Semitekolos filed a criminal complaint with the Suffolk County, New York District Attorney's Office (the "District Attorney") alleging embezzlement and larceny by Debtor (the "First Criminal Complaint"). Motion at Ex. "D".

On June 28, 2010, Debtor filed a petition for relief under Chapter 7 of the Bankruptcy

---

[2] For a declaration or affidavit to be competent summary judgment evidence, it must be, among other things, signed "as true under penalty of perjury" and "made on personal knowledge." 28 U.S.C. § 1746; FED. R. CIV. P. 56(c)(4); *see Jean v. Acme Bus Corp.*, 2012 WL 4171226, at *5 (E.D.N.Y. Sept. 19, 2012). In ruling on summary judgment, this Court has not considered the "declaration" of Christopher Nicolino, Suffolk County Assistant District Attorney [dkt item 17, Ex "E"], which is offered as evidence by Defendants, because Nicolino's statement is not expressly made based upon his personal knowledge. The Court has also not considered the two "affidavits" signed by Debtor several months before this adversary proceeding was commenced and which are annexed to Debtor's Opposition [dkt item 18, Ex. "C"], because neither "affidavit" was signed as true under penalty of perjury.

Code and scheduled a general unsecured debt owed to Majesty for a "judgment re business indebtedness." [Main Case No. 10-74946-ast, dkt item 1, Sch. "F"]

On July 17, 2010, Majesty filed a proof of claim in the amount of $249,125 on account of the unpaid balance of the Confession of Judgment. Majesty did not take any other action in Debtor's bankruptcy case; specifically, Majesty did not seek a determination of nondischargeability.

On January 3, 2011, Debtor received a discharge, and his case was closed on March 15, 2011.

On February 2, 2011, Majesty's accountant, Anthony Crowe ("Crowe"), was deposed by the District Attorney in connection with a criminal investigation of Debtor.

On February 23, 2011, Majesty and Semitekolos filed a second, more factually detailed criminal complaint (the "Second Criminal Complaint"), which includes a sworn affidavit of Semitekolos (the "Semitekolos Affidavit"). Motion at Ex. "A" [dkt item 17-2]. According to the Semitekolos Affidavit, in 2008 Semitekolos "noticed a discrepancy between the accounts receivable and inventory", and "[s]ometime around father's day 2009, I confronted Gary [Debtor] about the discrepancies. Gary admitted to me that he had altered the billing sheets to increase his commissions and promised to repay the money he had stolen." The Semitekolos Affidavit adds that "[a]s of the date of this statement Gary has not repa[id] the remainder of the money. Furthermore Gary has advised me that he has declared bankruptcy. I believe that Gary has stolen funds from Majesty by his fraudulent actions and wish to have him prosecuted." *Id.* Majesty and Semitekolos did not file a motion with this Court relating to the discharge injunction prior to filing the Second Criminal Complaint. The Second Criminal Complaint does not request restitution or any form of compensation.

On October 19, 2011, Debtor was arraigned on the charge of grand larceny in the second degree.

On December 13, 2011, Debtor filed a motion to reopen his bankruptcy case and seeking to hold Semitekolos and Majesty in civil contempt for willfully violating the discharge injunction under § 524(a), and seeking to enjoin Semitekolos, Majesty, and the Suffolk County District Attorney from continuing the criminal prosecution of Debtor (the "Motion to Reopen"). [Main Case No. 10-74946-ast, dkt item 19] The Motion to Reopen alleges that "Semitekolos and Majesty filed the Complaint with the Suffolk District Attorney with the explicit purpose and intention of utilizing the District Attorney's office as a means of collecting upon the Debtor's discharged debt." Motion to Reopen at ¶ 26. The Motion to Reopen also asserts that "[a]s a result of Semitekolos' and Majesty's actions, the Debtor is currently facing trial on one count of grand larceny or the possible alternative of a plea, of which restitution would be an integral part of any disposition." Motion to Reopen at ¶ 28.

On January 24, 2012, a hearing was held on the Motion to Reopen, at which counsel for Debtor and counsel for Defendants appeared. Following the hearing, on January 25, 2012, this Court entered an Order reopening Debtor's case for the limited purpose of permitting Debtor to file an adversary proceeding regarding Debtor's discharge injunction claims. [Main Case No. 10-74946-ast, dkt item 23]

On February 9, 2012, Debtor commenced this adversary proceeding against Majesty, Semitekolos, and the District Attorney seeking substantially the same relief as sought in the Motion to Reopen (the "Complaint"). [dkt item 1] A copy of the Summons and Complaint were served on Semitekolos, Majesty and the District Attorney. [dkt item 3] The Complaint asserts that "upon information and belief, Semitekolos and Majesty filed the [Second Criminal]

Complaint with the Suffolk District Attorney with the explicit purpose and intention of utilizing the Suffolk County District Attorney's Office as a means of collecting upon the Debtor's discharged debt. . . . That as a result of Semitekolos' and Majesty's actions, the Debtor is currently awaiting indictment on one count of grand larceny or the possible alternative of a plea, of which restitution would be an integral part of any disposition." Complaint at ¶¶ 29, 31.

On March 1, 2012, Majesty and Semitekolos interposed an answer. [dkt item 5]

On March 27, 2012, Debtor pleaded guilty to grand larceny in the fourth degree, and was scheduled to be sentenced on March 26, 2013.

On June 20, 2012, Debtor dismissed the adversary proceeding against the District Attorney. [dkt item 12]

On July 16, 2012, this Court entered an Order setting December 31, 2012, as the deadline for the completion of fact discovery, and scheduling trial for February 11, 2013. [dkt item 14] Thereafter, to allow additional time to consider this Motion, the Court rescheduled the trial for June 10, 2013. [dkt item 20] Neither party requested additional time to conduct discovery in light of this new trial date.

### Summary of Arguments[3]

On October 9, 2012, Defendants filed the instant Motion arguing that "there are no genuine facts in dispute." Motion at p. 9. According to Defendants, "[a]s the original criminal complaint was made by the Defendants to the Suffolk County District Attorney's Office prior to the commencement of the bankruptcy case, the automatic stay and discharge injunction

---

[3] Counsel is reminded that pleadings should not contain extensive block quotes from cases but should summarize and synthesize the relevant applicable law. *See* FED. R. CIV. P. 8(a)(2), made applicable here by FED. R. BANKR. P. 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief"; *see also Woodward v. Raymond James Fin., Inc.*, 732 F. Supp. 2d 425, 428 n.2 (S.D.N.Y. 2010); *Local No. 38 Intern. Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*, 724 F. Supp. 2d 447, 451 (S.D.N.Y. 2010) (dismissing complaint that was "lard[ed]" with block quotes).

provisions of the Bankruptcy Code were not abridged at the time of the Defendants' original complaint to the Suffolk County District Attorney." Motion at p. 15. The Motion further asserts that "[t]he decision as to whether the Suffolk County District Attorney prosecuted the criminal matter rested in the sole discretion of the Suffolk County District Attorney . . . ." Motion at p. 24. Thus, Defendants argue they cannot be held liable for a violation of the discharge injunction under § 524(a)(2). Defendants further assert that any award of restitution by the state criminal court would be nondischargeable and therefore not subject to the discharge injunction. Motion at pp. 10-14, citing 11 U.S.C. § 523(a)(7); *Kelly v. Robinson*, 479 U.S. 36 (1986).

Annexed to the Motion is the sworn declaration of Semitekolos (the "Semitekolos Declaration") [Motion at Ex. "F"], which states that "[a]fter a lengthy period of apparent inaction, I received a telephone call from an investigator for the Suffolk County District Attorney shortly before February 23, 2011 requesting that I come to his office to discuss the matter further with him." Semitekolos Declaration at ¶ 7. The Semitekolos Declaration goes on to state:

> It was at this meeting on February 23, 2011 that I signed the February 23, 2011 complaint and Mr. Andersen notarized my signature. Upon information and belief, it was the complaint dated February 23, 2011 that led to the arrest and indictment of the Debtor.

> Again, let me re-emphasize that the Suffolk County District Attorney initiated the communication with me pertaining to the February 23, 2011 meeting and I had advised the Suffolk County District Attorney office as to the Debtor's Chapter 7 bankruptcy case and the subsequent discharge in bankruptcy at the February 23, 2011 meeting. The assistant Suffolk County district attorney advised me that the bankruptcy would have no effect on the pending criminal matter against the Debtor.

Semitekolos Declaration at ¶ 8-9.

On October 23, 2012, Debtor filed opposition to the Motion (the "Opposition") [dkt item 18], in which he argues that "Defendants' Motion must be denied as material issues of fact remain. . . . Specifically, Defendants' Motion fails to prove that Defendants' did not present

themselves to the Suffolk County District Attorney shortly after receiving notice of Otten's discharge with the intent to collect upon a discharged debt." Opposition at ¶ 3. Debtor also asserts that summary judgment must be denied because of an "absence of the facts and circumstances surrounding Crowe being called into the Suffolk County District Attorney's Office . . . ." Opposition at ¶ 32.

With respect to restitution, Debtor states in his Opposition that as a result of his guilty plea, Debtor "will not be responsible for any restitution payments to Defendants." Opposition at ¶ 18. Thus, in opposing summary judgment, Debtor appears to concede that Defendants will now not be able collect a discharged debt through restitution. However, because Debtor alleges that Defendants' intent in submitting the Second Criminal Complaint was to collect a discharged debt, and because the discharge injunction prohibits any act to collect a discharged debt, this Court will closely scrutinize all of Defendants' post-discharge conduct.

On November 2, 2012, Defendants filed a Reply in support of their Motion [dkt item 19], asserting that there is no material fact in dispute because the Semitekolos Affidavit states that the District Attorney initiated contact with the Defendants post-discharge in February 2011, and that Debtor has not put forward any facts to refute Semitekolos' sworn statement.

Thereafter, the Court took Defendants' Motion and the related filings under submission.

**<u>Summary of Ruling</u>**

The central issue before this Court, as raised by Debtor, is whether Defendants violated the discharge injunction by filing the Second Criminal Complaint and assisting the District Attorney with its ongoing criminal investigation of Debtor with the alleged intention of collecting a discharged debt. In resolving this issue, this Court adopts a test which has not been applied in any reported decision, as follows: because the post-discharge Second Criminal

Complaint shares a common core of operative facts with the prepetition First Criminal Complaint, the Second Criminal Complaint relates back to the prepetition criminal proceeding and, therefore, the discharge injunction was not violated.

If a reviewing court determines that the relation back test is not an appropriate mode of analysis, or that the test is not satisfied in this case, this Court further holds that Defendants did not violate the discharge injunction because (1) the District Attorney had discretion to determine whether to investigate and prosecute Debtor based upon the Second Criminal Complaint, and (2) Debtor offers no evidence that Defendants exercised any control over the criminal investigation or prosecution, even though (3) Debtor has established that any charges that may have been filed had a possibility of resulting in compensation to Defendants.  Because Debtor has not established both control and a possibility of recovery, Debtor has failed to prove that the filing of the Second Criminal Complaint was an act "to collect" a discharged debt, thus rendering Defendants' intent to collect an unpaid debt, even if proven, irrelevant.  This Court believes this approach harmonizes the various approaches taken in reported decisions in this area; however, because this approach also has not been taken in any reported decision, this Court has also analyzed Defendants' conduct under the existing intent-based analysis.

Treating the Second Criminal Complaint as a stand-alone post-discharge act, and applying the intent-based analysis adopted by several courts in considering post-petition criminal complaints relating to discharged debts, this Court concludes that Debtor has failed to prove by clear and convincing evidence that Defendants filed the Second Criminal Complaint with the intent to collect a discharged debt and, therefore, did not violate the discharge injunction.

Accordingly, under each of these three alternative analyses, Defendants' Motion for summary judgment should be granted.

<u>Discussion</u>

**A.  Standard for Summary Judgment**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure ("FRCP"), as incorporated

by Rule 7056 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), summary

judgment should be granted to the moving party if the Court determines that "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.4 (1986) (quoting

FED. R. CIV. P. 56(c)) (internal quotation marks omitted).  A movant has the initial burden of

establishing the absence of any genuine issue of material fact.  *Celotex*, 477 U.S. at 322-23.  A

fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of fact is genuine "if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  "When summary

judgment is sought, the moving party bears an initial burden of demonstrating that there is no

genuine dispute of material fact to be decided with respect to any essential element of the claim

in issue; the failure to meet this burden warrants denial of the motion." *Smith v. Goord*, 2008

WL 902184, at *4 (N.D.N.Y. Mar. 31, 2008) (citing *Anderson*, 477 U.S. at 250 n.4).

If the movant meets its initial burden, the nonmoving party "must do more than simply

show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*

*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, it must present "significant

probative evidence" that a genuine issue of fact exists. *Anderson*, 477 U.S. at 249 (internal

citations and quotation marks omitted).  "There is no issue for trial unless there exists sufficient

evidence in the record favoring the party opposing summary judgment to support a jury verdict

in that party's favor." *Cadle Co. v. Newhouse*, 2002 WL 1888716, at *4 (S.D.N.Y. Aug. 16, 2002) (citing *Anderson*, 477 U.S. at 249); *see also Anderson*, 477 U.S. at 250 (finding that summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

**B.      The Discharge Injunction and Criminal Proceedings**[4]

    **1.      Scope of the Discharge Injunction**

To ensure that an honest but unfortunate debtor who complies with the provisions of the Bankruptcy Code can receive his or her "fresh start," § 524(a) imposes a permanent injunction on creditors, prohibiting them from seeking to collect or enforce obligations of the debtor that were discharged in bankruptcy. *See In re Watkins*, 240 B.R. 668, 675 (Bankr. E.D.N.Y. 1999). Section§ 524(a)(2) provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . ." 11 U.S.C. § 524(a)(2). "A debtor may bring civil contempt charges against a party [for] violating the discharge injunction of section 524. . . . If contempt is established, the injured party may be able to recover damages as a sanction for the contempt." *See In re Michalski*, 2009 WL 2256697, at *4 (Bankr. N.D. Ohio July 23, 2009) (hereinafter "*Michalski I*"), *aff'd*, *In re Michalski*, 452 F. App'x 656 (6th Cir. 2011) (hereinafter "*Michalski II*") (internal citations and quotation marks omitted); *Watkins*, 240 B.R. at 678-83. However,

---

[4] The automatic stay under § 362(a) and the discharge injunction under § 524(a) operate in similar ways, with § 362(a) imposing a temporary injunction against certain actions during the pendency of the bankruptcy case and § 524(a) imposing a permanent injunction post-discharge. *In re Fucilo*, 2002 WL 1008935, at *5 (Bankr. S.D.N.Y. Jan. 24, 2002) ("Upon the filing of a bankruptcy case, the Code grants the debtor an automatic stay which is ultimately replaced by a permanent discharge injunction."). Accordingly, courts generally apply a similar analysis to the stay and the discharge injunction. *See, e.g.*, *In re Michalski*, 452 F. App'x 656, 658 (6th Cir. 2011); *Green v. Welsh*, 956 F.2d 30, 33-35 (2d Cir. 1992). In this case, Debtor does not allege that Defendants violated the stay or that Defendants took any action with respect to the Criminal Complaints during the pendency of Debtor's Chapter 7 case. Accordingly, this Court's analysis focuses solely on the discharge injunction and not the stay.

"[t]o succeed on this claim, a plaintiff must show that a violation occurred by 'clear and convincing evidence.'" *In re McKenzie-Gilyard*, 388 B.R. 474, 481 (Bankr. E.D.N.Y. 2007) (quoting *In re Puller*, 2007 WL 1811209, at *3 (Bankr. N.D. W. Va. June 20, 2007)); *see In re Nash*, 464 B.R. 874, 880 (B.A.P. 9th Cir. 2012); *In re Nassoko*, 405 B.R. 515, 520 (Bankr. S.D.N.Y. 2009).

While the discharge injunction is broad, it is not absolute. Neither the automatic stay nor the discharge injunction bars the commencement or continuation of a criminal investigation or prosecution by the state. *See* 11 U.S.C. § 362(b)(1); *Kelly*, 479 U.S. at 47-48; *Younger v. Harris*, 401 U.S. 37, 43-44 (1971); *In re Byrd*, 256 B.R. 246, 251 (Bankr. E.D.N.C. 2000) ("a state may initiate or continue criminal prosecutions regardless of the pendency of a bankruptcy case, and further that it may do so even when the state's – or a complaining witness's – primary purpose is the collection of a debt.").

Further, a debtor cannot utilize bankruptcy to discharge criminal liability, a criminal judgment, or a restitution order. *See Kelly*, 479 U.S. at 50 (noting "the established state of the law [is] that bankruptcy courts c[an] not discharge criminal judgments" and holding that criminal restitution obligations are nondischargeable under § 523(a)(7)); *U.S. v. Colasuonno*, 697 F.3d 164, 172-76 (2d Cir. 2012) (bankruptcy filing does not affect probation revocation due to nonpayment of criminal restitution); *In re HBG Servicenter, Inc.*, 45 B.R. 668, 672 (Bankr. E.D.N.Y. 1985) (noting "the clear congressional intent, reflected in the Code's legislative history and in the explicit language of the statute that bankruptcy not be a refuge from criminal proceedings"). Excluding state criminal proceedings from the stay and the discharge injunction reflects a "[r]espect for federalism"; *In re Pearce*, 400 B.R. 126, 132 (Bankr. N.D. Iowa 2009); and is consistent with "the longstanding public policy against federal court interference with

state court proceedings", particularly criminal proceedings. *Younger*, 401 U.S. at 43; *Dovell v. The Guernsey Bank*, 373 B.R. 533, 538 (S.D. Ohio 2007); *Zervoudis v. Mass. State Lottery Comm'n*, 246 B.R. 470, 473-75 (Bankr. D. Mass. 2000). Accordingly, bankruptcy courts should generally not interfere in a state's administration of its criminal justice system.

While the discharge injunction does not bar state action in criminal proceedings, a creditor "may not commence a [post-petition or post-discharge] criminal action for the primary purpose of recovering a debt that is dischargeable in bankruptcy." *Byrd*, 256 B.R. at 251. "A number of courts have recognized that criminal prosecution may violate § 524(a)(2) if the prosecution is motivated primarily by the creditor's desire to recover a debt." *Id.* (citing cases).

Thus, there is a tension in the Bankruptcy Code between what actions a state may take with respect to a criminal investigation or prosecution relating to an unpaid debt and what actions a creditor may take to initiate or assist a criminal investigation without running afoul of the discharge injunction. This Court attempts to resolve this tension by the tests established hereunder, and to strike a balance between the power of the state to investigate and prosecute criminal conduct with the debtor's right to be free of post-discharge efforts to collect a discharged debt.

### 2.      The Prepetition / Post-Petition Divide

The case law addressing criminal complaints against debtors frequently turns on whether the criminal complaint or the bankruptcy petition was filed first. Thus, a creditor who files a prepetition criminal complaint, even if for the primary purpose of collecting a debt, does not violate the stay or the discharge injunction because neither is implicated by the creditor's prepetition actions. *See In re Caravona,* 347 B.R. 259, 265 (Bankr. N.D. Ohio 2006); *Byrd*, 256 B.R. at 251 ("If a creditor already has brought its grievance to the attention of law enforcement

officials prior to the debtor's bankruptcy filing, those officials may proceed as they deem appropriate and may elect to prosecute, or not."). Similarly, a creditor who filed a prepetition criminal complaint does not violate the discharge injunction by assisting law enforcement with the criminal investigation at law enforcement's request after either the petition has been filed or after debtor has received her discharge. *See Michalski I*, 2009 WL 2256697, at *3; *Nash,* 464 B.R. at 881-82 (dismissing a § 524(a)(2) action in which debtor had settled out of court with the district attorney and the creditor where debtor failed to offer evidence that the creditor participated in settlement negotiations); *Williams*, 438 B.R. at 692 ("A creditor who believes he was a victim of a crime perpetrated by the debtor is not necessarily enjoined by a debtor's discharge from reporting the crime").

By contrast, courts are split on whether, and under what circumstances, a creditor violates the automatic stay or the discharge injunction by filing a post-petition or post-discharge criminal complaint for the primary purpose of collecting a dischargeable debt. *Compare Byrd*, 256 B.R. at 252 ("once a debtor files a petition for bankruptcy, a disgruntled creditor may not then approach a governmental prosecutorial entity in order to prompt a criminal action to recover the debt."); *In re Daulton*, 966 F.2d 1025, 1028 (6th Cir. 1992) ("It is undisputed that the Bankruptcy Code precludes the use of criminal actions to collect debts that have been discharged in bankruptcy"); *and Hucke v. Oregon*, 992 F. 2d 950, 953 (9th Cir. 1993), *cert den.* 510 U.S. 862 (1993) (noting that even states may not commence post-petition criminal actions whose primary purpose is the collection of fines and not criminal investigation or prosecution), *with In re Michalski II*, 452 F. App'x at 658 ("[t]he mere fact that a debt has been discharged in bankruptcy does not preclude a criminal action from proceeding based on the debtor's alleged criminal conduct in relation to the debt"); *and In re Williams*, 438 B.R. 679, 687 (B.A.P. 10th

Cir. 2010) ("[creditor] did not violate the discharge injunction by accepting the benefits of the undischarged restitution obligation that was imposed as a part of [debtor's] sentence").

In the context of a post-petition or post-discharge criminal complaint, some courts look to whether the filing of the criminal complaint "is primarily motivated by an intent to collect a dischargeable debt." *Pearce*, 400 B.R. at 131.[5]  Other courts have held that intent is irrelevant in the post-petition context, because neither the stay nor the discharge injunction is implicated by criminal prosecutions. *See*, *e.g.*, *In re Dunn*, 2013 WL 1091737, at *7 (Bankr. E.D. Tenn., Jan. 29, 2013); *In re Pickett*, 321 B.R. 663, 668 (Bankr. D. Vt. 2005) (holding that a bad check prosecution that could result in restitution to a creditor was not a discharge injunction violation). Still other courts have rejected intent or primary motivation in favor of the U.S. Supreme Court's test in *Younger v. Harris* for determining whether a federal court can enjoin a state criminal prosecution. *Byrd*, 256 B.R. at 252.[6]  Nevertheless, the majority rule appears to be that "the motivation of a creditor whose debt was discharged in seeking prosecution of the debtor may be relevant when it is possible to argue that no crime was committed, or that the process under

---

[5] *See In re Fidler*, 442 B.R. 763, 768 (Bankr. D. Nev. 2010) (denying debtor's request to enjoin creditors from testifying at debtor's criminal trial related to an unpaid debt, but reserving decision pending the outcome of that trial on whether the creditors violated § 524(a)(2) because it appeared the creditors were "attempting to use the criminal proceeding as an end-run around the discharge order."); *In re Brown*, 213 B.R. 317, 321 (Bankr. W.D. Ky. 1997) (sanctioning creditor who had notice of the bankruptcy case for "flagrantly disregard bankruptcy laws" by filing a post-petition criminal complaint for the purpose of collecting an unpaid debt); *In re DeLay*, 48 B.R. 282, 285-86 (W.D. Mo. 1984) (upholding contempt order against creditor for post-petition collection demand, but reversing sanction based upon creditor's post-petition filing of a criminal complaint and identification of debtor as the perpetrator because there was "insubstantial evidence" that the criminal proceeding "was designed to compel payment of the debt."); *see also Caravona*, 347 B.R. at 267-69 (denying creditor's motion to dismiss debtor's discharge injunction violation suit where the factual record was not sufficiently developed).

[6] The *Younger* test requires a showing that:

> First, the state court action must be brought in bad faith or for harassment or under extraordinary circumstances. Second, the party requesting federal court intervention must stand to suffer a great and immediate irreparable harm to federally protected rights. Finally, this harm must be such that it cannot be eliminated by a defense against the criminal prosecution.

*Byrd*, 256 B.R. at 252, quoting *In re Starr*, 147 B.R. 380, 382 (Bankr. E.D. Va. 1991) (construing *Younger*, 401 U.S. at 46).

which the debtor is being prosecuted is tainted by bad faith, or a criminal charge is threatened solely to coerce payment [of] the discharged debt." *Williams*, 438 B.R. at 693.

The court in *Byrd* summarized the case law as follows: "once a debtor files a petition for bankruptcy, a disgruntled creditor may not then approach a governmental prosecutorial entity in order to prompt a criminal action to recover the debt. If the creditor already has complained to authorities by the time a petition is filed, those authorities may commence or continue a criminal prosecution, even one intended to result in direct restitution to the victim/creditor, as they see fit. But if the debtor files for bankruptcy before a creditor complains to prosecuting authorities, that complaint – though it may still, in the discretion of prosecutors, result in a criminal prosecution – may constitute a violation of the automatic stay or discharge injunction." *Byrd*, 256 B.R. at 252.

### 3.    Implications of the Affirmative Duty to Cure Discharge Injunction Violations

Complicating this seeming bright line between prepetition and post-petition criminal complaints is the fact that, as is evident from this case, criminal investigations and prosecutions are fluid, and may well span the prepetition, post-petition and post-discharge periods. In that setting, courts must balance law enforcement's discretion to decide whether and how to investigate or prosecute a prepetition criminal complaint[7] with the affirmative duty courts in this Circuit have generally imposed on creditors to prevent or remedy a violation of the automatic stay or the discharge injunction that may spring from prepetition actions. *See In re Wright*, 328 B.R. 660, 663 (Bankr. E.D.N.Y. 2005) ("It is well settled that a creditor has an affirmative duty under § 362 to take the necessary steps to discontinue its collection activities against a debtor.");

---

[7] In New York State, "[t]he District Attorney has broad discretion in determining when and in what manner to prosecute a suspected offender." *People v. DiFalco*, 44 N.Y.2d 482, 486, 377 N.E.2d 732, 735 (N.Y. 1978); *see Cloke v. Pulver*, 243 A.D.2d 185, 189, 675 N.Y.S.2d 650, 653 (N.Y. App. Div. 3rd Dep't 1998).

*see also In re Schultz*, 2009 WL 2872858, at *4 (Bankr. N.D.N.Y. Feb. 20, 2009); *McKenzie-Gilyard*, 388 B.R. at 481-82; *see generally In re Ebadi*, 448 B.R. 308 (Bankr. E.D.N.Y. 2011).

Therefore, a conundrum arises: if a prepetition criminal complaint is filed and the debtor thereafter files for bankruptcy, what impact does the creditor's affirmative duty to prevent a stay or discharge injunction violation have on the ongoing criminal investigation or prosecution, and what steps can or must a complaining creditor take?

This intersection of bankruptcy and criminal law cannot be resolved without consideration of principles of federalism and noninterference in state criminal proceedings; more specifically, a federal bankruptcy court should not require a creditor to cease assisting or cooperating with law enforcement in an ongoing criminal investigation; such actions cannot be said to violate the stay or the discharge injunction, even if that creditor is also an alleged victim of the alleged conduct, as is often the case.  A complaining party with knowledge of the alleged criminal activity should not be placed in the potentially untenable situation of deciding whether or not to cooperate with law enforcement for fear of being sued for an alleged stay or discharge injunction violation.  This Hobson's Choice[8] would both ignore the fact that it is law enforcement in the discharge of its obligations and in the exercise of its prosecutorial discretion that makes the ultimate determination whether to investigate and/or prosecute a debtor, and would be contrary to the express words of the Bankruptcy Code which excludes "the commencement or continuation of a criminal action or proceeding against the debtor" from the

---

[8] A "Hobson's Choice" is "an apparently free choice when there is no real alternative" or the need to accept "one of two or more equally objectionable alternatives." MERRIAM-WEBSTER DICTIONARY, *available at* http://www.merriam-webster.com/dictionary/hobson's%20choice; *see, e.g., Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 380 (1992) ("respondents were faced with a Hobson's choice: continually violate the Texas law and expose themselves to potentially huge liability; or violate the law once as a test case and suffer the injury of obeying the law during the pendency of the proceedings and any further review."); *United States v. Cain*, 671 F.3d 271, 283 (2d Cir. 2012) (noting that an extortion victim faces a Hobson's Choice); *In re Adelphia Comm. Corp.*, 293 B.R. 337, 359 (Bankr. S.D.N.Y. 2003) ("Their Hobson's choice of waiving their Fifth Amendment Rights, or suffering a $500 million default judgment . . . plainly establishes irreparable harm.").

broad reach of the automatic stay.  11 U.S.C. § 362(b)(1); *see Michalski II*, 452 F. App'x at 658; *Williams*, 438 B.R. at 687.  Finally, as a corollary, a debtor may not use bankruptcy as a shield against criminal prosecution; it is "contrary to the public interest to immunize a debtor from prosecution of a crime simply because he has already discharged all the debts related to the crime."  *In re Williams*, 438 B.R. at 692; *see HBG Servicenter*, 45 B.R. at 672.

In sum, the filing of a prepetition criminal complaint cannot violate the discharge injunction, whereas the filing of a post-discharge criminal complaint may very well violate the discharge injunction if it was filed with the intent to collect a discharged debt.  This case presents a hybrid scenario:  Defendants filed the First Criminal Complaint prepetition and thereafter assisted the District Attorney with the criminal proceeding which included filing the Second Criminal Complaint after being contacted by the District Attorney, and allegedly with the intent to collect a discharged debt.  The issue becomes whether to treat this hybrid case as a continuation of a prepetition criminal action, where intent is irrelevant, or as a stand-alone, post-discharge act, where intent is scrutinized.

### C.    Debtor Has Failed to Establish That Defendants Violated the Discharge Injunction

To balance the various competing interests and policies, this Court adopts the rule that a creditor who files a prepetition criminal complaint does not violate the discharge injunction by cooperating with law enforcement in continuing a post-discharge criminal investigation or prosecution, even if the creditor files a second, post-discharge criminal complaint, so long as the post-discharge conduct and/or complaint shares a common core of operative facts with the prepetition criminal complaint.

This Court also adopts an alternative rule that, even if the post-discharge complaint does not relate back, a creditor does not violate the discharge injunction by complaining to and/or cooperating with law enforcement, unless the debtor proves by clear and convincing evidence

that the creditor exercised some control over the criminal investigation or prosecution, and that

any charges that may have been filed could have resulted in compensation to the creditor related

to a discharged debt.  Because prosecutors have broad discretion to investigate and prosecute

criminal complaints, this Court concludes that a creditor's filing of a criminal complaint, in and

of itself, does not constitute an act to collect a discharged debt unless the debtor can prove that

the creditor exercised some control over the criminal proceeding and had a possibility of

recovering the discharged debt, whether through restitution or otherwise..  This approach

properly balances the debtor's rights to bankruptcy protection and to a fresh start with respect for

federalism and state sovereignty over criminal proceedings.

### 1.    Both Criminal Complaints Share a Common Core of Operative Facts

Because Debtor seeks to enforce a civil injunction through this adversary proceeding, this

Court holds that the proper test to determine whether the filing of the Second Criminal Complaint

was a separate act or a continuation of Defendants' prepetition cooperation with the District

Attorney is to apply the "common core of operative facts" test utilized under FRCP 15(c).

"An amendment to a pleading relates back to the date of an original pleading when . . .

the amendment asserts a claim or defense that arose out of the conduct, transaction, or

occurrence set out – or attempted to be set out – in the original pleading." *In re Khafaga*, 431

B.R. 329, 334-35 (Bankr. E.D.N.Y. 2010) (quoting Fed. R. Civ. P. 15(c)(1)). "An amended

complaint is deemed to arise out of the same conduct, transaction or occurrence as the original

complaint when both are linked by a common core of operative facts." *Id.* at 334 (quoting

*Ainbinder v. Kelleher*, 1997 WL 420279, at *9 (S.D.N.Y. July 25, 1997)); *see Perez v. United

States*, 2009 WL 1606470, at *4 (E.D.N.Y. June 08, 2009); *Oliner v. McBride's Indus., Inc.*, 106

F.R.D. 9, 12 (S.D.N.Y. 1985).  "An amended pleading does not relate back if it sets forth a

separate set of operative facts. Rather, it relates back 'if the [new] allegations amplify the facts alleged in the original pleading or set forth those facts with greater specificity.'" *Ainbinder*, 1997 WL 420279, at *9 (quoting *Oliner*, 106 F.R.D. at 12); *see Mayle v. Felix*, 545 U.S. 644, 664 (2005) (second habeas corpus petition did not relate back to prior petition where the second petition asserted new grounds for relief that were supported by facts that differed in time and type from those in the original petition); 54 C.J.S. §§ 328-33 (2010); 6A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure Civil § 1497 (3d. ed. 1998).

The Court has reviewed the First Criminal Complaint and the Second Criminal Complaint and finds that they share a common core of operative facts. Both Criminal Complaints allege that Debtor obtained $328,900 from Defendants through the use of false billing sheets; both Complaints state that Debtor signed the Confession of Judgment and made several payments to Defendants, but ultimately stopped making payments. The Second Criminal Complaint is more factually detailed than the First Criminal Complaint – describing the parties' history and transactions, the circumstances leading up to Debtor executing the Confession of Judgment, and Debtor's payments under the Confession of Judgment – and it includes the sworn Semitekolos Affidavit. However, the Second Criminal Complaint does not describe a separate set of operative facts from those contained in the less factually detailed First Criminal Complaint. Rather, the more detailed facts in the Second Criminal Complaint merely amplify and provide greater specificity to the First Criminal Complaint. Thus, both Complaints "are linked by a common core of operative facts," and the Second Criminal Complaint, therefore, relates back to the filing of the prepetition First Criminal Complaint. *Ainbinder*, 1997 WL 420279, at *9. As a result, Debtor has failed to establish that Defendants violated the discharge injunction.

**2.    Debtor Has Failed to Show that Defendants Exercised Any Control over the Criminal Proceeding**

If the post-discharge criminal complaint were determined to not share a common core of operative facts with the prepetition complaint, or if this analysis were determined to be improper methodology, then the Court must determine whether the creditor violated the discharge injunction.  As noted above, in considering whether a creditor violated the discharge injunction by filing a criminal complaint, a number of bankruptcy courts have analyzed whether the creditor was "primarily motivated by an intent to collect a dischargeable debt," while some courts have rejected intent in the context of criminal prosecutions.  In balancing the debtor's fresh start on the one hand with the interests of law enforcement on the other, this Court holds that in order to prove that the filing of a post-discharge criminal complaint and/or otherwise cooperating with law enforcement violated the discharge injunction, the debtor must establish by clear and convincing evidence that (1) the creditor undertook the post-discharge actions with the intent to collect a discharge debt, (2) the creditor exercised some control over the prosecuting authority's decision whether to investigate and prosecute the debtor, and (3) the criminal proceeding could result in recovery of the discharged debt, whether by restitution or otherwise.

With respect to the second element, the debtor must show that the creditor exercised some control over the decision whether to prosecute and for what offenses, because the creditor's intent may be irrelevant to law enforcement's decisions whether to prosecute or not, whether to accept a plea bargain or not and, if so, as to what offenses and with what penalties.  Similarly, the creditor's intentions may not be impactive in a sentencing judge's determinations as to what punishment to impose.  As is evident from this case, while the alleged offenses originally investigated may have carried the possibility of restitution, the plea agreement Debtor entered into with the District Attorney did not include restitution.  Opposition at ¶ 18.

Further, a debtor must show that the criminal proceeding when instituted could result in recovery for the creditor because intent without a possibility of recovery cannot be an act "to collect, recover or offset" a discharged debt.  In other words, if a creditor filed a criminal complaint against a debtor with no possibility of monetary recovery, but did so out of a civic duty to "do the right thing," or even merely out of malice or spite to punish the debtor, then the creditor could not have intended to collect a discharged debt.

Applying the test outlined above, this Court concludes that Debtor has failed to establish that Defendants violated Debtor's discharge injunction either by filing the Second Criminal Complaint post-discharge after being contacted by the District Attorney or by cooperating in the criminal investigation.

### a.    *Intent*

"In order for there to be a finding of contempt for the violation of § 524, a person must act willfully and with knowledge."  *Nassoko*, 405 B.R. at 522.  In his Complaint, Debtor alleges that "upon information and belief, Semitekolos and Majesty filed the [Second Criminal] Complaint with the Suffolk District Attorney with the explicit purpose and intention of utilizing the Suffolk County District Attorney's Office as a means of collecting upon the Debtor's discharged debt."  Complaint at ¶ 29.  Defendants dispute Debtor's allegation of intent, and point to the Semitekolos Declaration as evidence that the District Attorney initiated contact with Defendants post-discharge as part of an ongoing criminal investigation.  While Debtor has made an allegation against Defendants, he has failed to raise a genuine issue of material fact, and cannot establish a discharge injunction violation by clear and convincing evidence.  *See McKenzie-Gilyard*, 388 B.R. at 481.

The undisputed facts before this Court establish that Defendants filed the First Criminal Complaint prepetition in March 2010.  Thereafter, the District Attorney investigated the allegations in the First Criminal Complaint.  After the District Attorney initiated contact with Semitekolos in February 2011, Semitekolos went to the District Attorney's Office on February 23, 2011, and executed an Affidavit and the more detailed Second Criminal Complaint.  The Second Criminal Complaint, based upon Semitekolos' and Crowe's depositions, was signed by Semitekolos on February 23, 2011, after the Debtor obtained his discharge.

Debtor alleges that after receiving notice of Debtor's discharge, it was Semitekolos who "presented himself at the Suffolk County District Attorney's office" in an attempt to collect a discharged debt.  Complaint at ¶ 25.  However, this allegation is refuted by Semitekolos' sworn statement that the District Attorney initiated the post-discharge contact.  The Second Criminal Complaint, signed by Semitekolos, simply states that "I believe that [Debtor] has stolen funds from Majesty by his fraudulent actions and wish to have him prosecuted."  No other indication of Defendants' intent in filing the Second Criminal Complaint is present in the record before this Court; the Second Criminal Complaint does not contain a request for restitution or compensation.

Debtor asserts that summary judgment is inappropriate because "Defendants' Motion fails to prove that Defendants[] did not present themselves to the Suffolk County District Attorney shortly after receiving notice of Otten's discharge with the intent to collect upon a discharged debt."  Opposition at ¶ 3.  However, Debtor's assertion is not supported by competent summary judgment evidence.  As stated above, in an action seeking sanctions based upon a violation of the discharge injunction, it is Debtor, as movant, who must establish the discharge injunction violation "by clear and convincing evidence."  *McKenzie-Gilyard*, 388 B.R. at 481.  Debtor has failed to controvert Semitekolos' sworn statement that the "District Attorney initiated

the communication with me pertaining to the February 23, 2011 meeting . . . ."  Semitekolos

Declaration at ¶ 9.  Debtor asserts that Semitekolos' sworn statement is "self-serving."

Opposition at ¶ 29, 43.  However, Debtor, who did not present an affidavit sworn to "as true

under penalty of perjury," has not offered any competent evidence to contradict Semitekolos'

sworn Declaration, and has therefore failed to raise a genuine issue of material facts as to the

District Attorney having initiated contact with Semitekolos.

The Court also finds no support for Debtor's allegation that there is a "conspicuous"

absence of facts surrounding the circumstances of Crowe's deposition.  Opposition at ¶ 32.  The

uncontroverted facts before this Court establish that Crowe was deposed by the District Attorney

in February 2011, before Semitekolos was interviewed, and prior to the filing of the Second

Complaint.  However, Debtor has not even alleged, let alone offered evidence, that Crowe was

acting as an agent of, or at the direction or behest of, Defendants when Crowe was deposed by

the District Attorney in February 2011.

Accordingly, Debtor has provided no evidence, let alone clear and convincing evidence,

that Defendants filed the Second Criminal Complaint with the intent to collect a discharged debt,

and has failed to raise a genuine issue of material fact thereon.

### b.    Exercise of Control

As noted above, in New York State, a district attorney has "broad discretion" to

determine whether, when and in what manner to investigate and prosecute a suspect.  *See*, *e.g.*,

*People v. DiFalco*, 44 N.Y.2d 482, 486, 377 N.E.2d 732, 735 (N.Y. 1978); *Cloke v. Pulver*, 243

A.D.2d 185, 189, 675 N.Y.S.2d 650, 653 (N.Y. App. Div. 3rd Dep't 1998).  Accordingly, when a

debtor alleges that a creditor violated the discharge injunction by filing a post-discharge criminal

complaint and/or by cooperating with law enforcement with the intent to collect a discharge debt,

the debtor must show that the creditor exercised some control over the decision to investigate and prosecute the debtor; otherwise, the creditor's intent or motive may be wholly irrelevant to the district attorney's decision whether and how to charge the debtor.

Here, Debtor has not provided any evidence or even alleged that Defendants exercised any control or had the ability to control the District Attorney's decision to prosecute Debtor.[9] Accordingly, because the District Attorney had discretion whether to investigate and prosecute Debtor, and whether to prosecute Debtor for a crime that may have resulted in restitution, Debtor has not shown that his arrest and prosecution were caused by an act undertaken by Defendants to collect a discharge debt, as opposed to a decision made by the District Attorney in exercising his prosecutorial discretion.

### c.    Prospect of Collecting the Discharged Debt

Also relevant to the § 524(a)(2) analysis is whether Defendants could have collected or recovered the discharged debt by means of the Second Criminal Complaint.  Debtor alleges in his Complaint that "as a result of Semitekolos' and Majesty's actions, the Debtor is currently awaiting indictment on one count of grand larceny or the possible alternative of a plea, of which restitution would be an integral part of any disposition."  Complaint at ¶ 31.  In fact, on October 19, 2011, Debtor was arraigned in New York State Supreme Court on the charge of grand larceny in the second degree, a charge that carries the possibility of restitution, although Debtor ultimately pleaded guilty as part of a plea agreement with the District Attorney that did not include the possibility of restitution.  *See* N.Y. CRIM. PROC. L. § 420.10; N.Y. PENAL L. §§ 60.27; 155.40 (McKinney 2012).  It appears, however, the restitution may be available in

---

[9] Because Debtor has not raised a question of fact regarding Defendants' control over the District Attorney, the Court does not need to address at this juncture precisely what level of control a debtor must establish to prove that the discharge injunction was violated.

nearly all criminal proceedings in New York State, including where the defendant is charged with a felony or with a misdemeanor.  *See* N.Y. PENAL L. §§ 60.27(5)(a) ("Except upon consent of the defendant or as provided in paragraph (b) of this subdivision, . . . the amount of restitution or reparation required by the court shall not exceed fifteen thousand dollars in the case of a conviction for a felony, or ten thousand dollars in the case of a conviction for any offense other than a felony."); *see also New York v. College Point Sports Ass'n, Inc.*, 61 A.D.3d 33, 45-46, 876 N.Y.S.2d 409, 419-20 (N.Y. App. Div. 2d Dept. 2009) (noting that defendants were sentenced to a one-year conditional discharge and ordered to pay restitution); *In re J.S.*, 15 Misc. 3d 855, 836 N.Y.S.2d 833 (N.Y. Fam. Ct. Nassau County 2007) (juvenile defendant convicted of misdemeanor may be subject to a restitution order).  Because under New York law, restitution or reparation may be ordered in connection with virtually any criminal conviction, including the charges originally brought against Debtor, a possibility of restitution did exist when Defendants filed the Second Criminal Complaint.

Even though criminal charges arising from Defendants post-petition actions could possibly have resulted in compensation to Defendants, Debtor has failed to prove by clear and convincing evidence that Defendants violated the discharge injunction because the District Attorney had discretion to determine whether to investigate and prosecute Debtor based upon the Second Criminal Complaint, and Debtor offers no evidence that Defendants exercised any control over the criminal investigation or prosecution.

Because the test promulgated by this Court reflects a novel approach, this Court will also analyze Defendants' Motion in the context of an intent-based analysis under the case law discussed above and briefed by the parties.

### 3.    Debtor Has Failed to Prove by Clear and Convincing Evidence That Defendants Intended to Collect a Discharged Debt

As noted above, the majority rule is that a creditor may not file a post-petition or post-discharge criminal complaint with the intent or primary motivation of collecting an unpaid debt. *Byrd*, 256 B.R. at 251.  Applying that rule to this case, it is clear that Debtor has failed to prove that Defendants filed the Second Criminal Complaint with the intent to collect a discharged debt.

As is discussed at length above, and incorporated here, the only competent summary judgment evidence before this Court is that Defendants filed the Second Criminal Complaint on February 23, 2011, during a meeting that was initiated by the District Attorney.  On the face of the Second Criminal Complaint and the Semitekolos Affidavit, there is no indication that Defendants sought restitution or to otherwise recover or collect a discharged debt.  Other than the possibility that Debtor could have been compelled to pay restitution under the charge for which he was arraigned, Debtor has simply offered nothing to substantiate his allegation that Defendants intended to collect a discharged debt.  Debtor has not shown that Defendants filed the Second Criminal Complaint in an "attempt[]to use the criminal proceeding as an end-run around the discharge order"; *In re Fidler*, 442 B.R. 763, 768 (Bankr. D. Nev. 2010); or that Defendants "flagrantly disregard bankruptcy laws"; *In re Brown*, 213 B.R. 317, 321 (Bankr. W.D. Ky. 1997).  On the contrary, this case is distinguishable from the reported cases in which courts found that the filing of a criminal complaint violated the discharge injunction because here there was not only "insubstantial evidence", but in fact no evidence, that the filing of the Second Criminal Complaint "was designed to compel payment of the debt." *In re DeLay*, 48 B.R. 282, 285-86 (W.D. Mo. 1984).  Therefore, under the intent-based analysis, Debtor has failed to establish by clear and convincing evidence that Defendants violated the discharge injunction.

**D.     There Is No Genuine Issue of Material Fact in Dispute**[10]

Ultimately, Debtor, as the movant, bears the burden of proving that his discharge injunction was violated by clear and convincing evidence.  *McKenzie-Gilyard*, 388 B.R. at 481. Despite the fact that this Court issued an Order on July 16, 2012, which gave the parties until December 31, 2012 to complete fact discovery, Debtor has not offered any facts to substantiate his allegations surrounding the filing the Second Criminal Complaint.  As the United States Supreme Court has stated, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting, *Anderson*, 477 U.S. at 247-48) (emphasis in original).

Certainly, the analysis would have been much simpler if Defendants had filed and prevailed in an action to have the debt owed by Debtor to Defendants declared nondischargeable. Nevertheless, on the specific facts of this adversary proceeding, this Court finds no violation of the discharge injunction.  Based upon the entire record before it, this Court concludes that Defendants have met their burden under FRCP 56(c) of establishing that there is no genuine issue of material fact in dispute in this action.  This Court further concludes that Debtor has failed to put forward "significant probative evidence" that a genuine issue of material fact exists as to whether Defendants improperly acted post-discharge with the intent to collect a discharged debt or that Defendants violated the discharge injunction.

---

[10] The Court is not stating findings of facts and conclusions of law as Bankruptcy Rule 7052, incorporating FRCP 52(a)(3), does not so require in ruling on a motion for summary judgment. FED. R. BANKR. P. 7052.

## <u>Conclusion</u>

For the foregoing reasons, Defendants' Motion for summary judgment will be granted.

A separate Order consistent herewith will issue.



Dated: May 3, 2013
    Central Islip, New York

_____
**Alan S. Trust**
**United States Bankruptcy Judge**